490 So.2d 769 (1986)
TRANS-GLOBAL ALLOY, LTD. & First National Bank of Jefferson Parish & (Intervenor) Pel Star Couplings, Inc., David S. Fitzgerald, Jr. & Winton Rebouche, Plaintiffs-Appellees-Appellants (FNJ),
v.
FIRST NATIONAL BANK OF LAFAYETTE, Defendant-Appellee.
No. 85-797.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1986.
*770 Shushan, Meyer, etc. (Rader Jackson, Donald A. Meyer, New Orleans), for plaintiffs-appellees-appellants.
Wayne A. Shullaw, of Broadhurst, Brook, Lafayette, for defendant-appellee.
Gary, Field, etc. (Leon Gary, Jr., Davis B. Allgood, Baton Rouge), for intervenor-appellee.
Before GUIDRY, DOUCET and MANSOUR[*], JJ.
DOUCET, Judge.
The issue involved in this appeal is whether the trial court was correct in finding that there was no wrongful dishonor of a draft drawn under a letter of credit. From a judgment holding that there was no wrongful dishonor, the plaintiffs appeal. We affirm.
Since letters of credit are rather specialized financial instruments, the following general discussion is given before considering the facts of this case.
"`A letter of credit is a written engagement by the issuer, usually a bank, to honor demands for payment which comply with the terms of the credit. A letter of credit involves at least three parties: the party requesting that the letter of credit be issued (customer); the party issuing the letter of credit (issuer); and the party in whose favor the letter of credit is issued (beneficiary).' (Footnotes omitted). Hawkland & Holland, UCC Series § 5-101:02 (Art. 5).
Traditionally, letters of credit have been used to finance international sales transactions. When used in this conventional fashion the credit is often designated a `commercial' letter of credit.
In a typical sale of goods transaction, involving a commercial letter of credit, the buyer (customer) requests his bank (issuer) to issue a letter of credit in favor of the seller (beneficiary). The seller/beneficiary is then entitled to draw on the letter of credit upon presentment of certain documents. The documentary evidence submitted to the issuing bank, such as a bill of lading, is proof that the goods have been shipped by the seller." Cromwell v. Commerce & Energy Bank, 450 So.2d 1 (La.App. 3rd Cir.1984), writ granted, 456 So.2d 1389 (La.1984), affirmed in part, reversed and remanded in part, 464 So.2d 721 (La.1985).
The parties involved in this litigation, under the above descriptive explanation, are as follows: Pel-Star Couplings, Inc. (Pel-Star) is the customer; Trans-Global Alloy, Ltd. (Trans-Global) is the seller/beneficiary; First National Bank of Lafayette (FNBL) is the issuing bank.
In January 1982 Pel-Star and Trans-Global entered into a contract under which Pel-Star would buy, and Trans-Global would sell, certain alloy steel couplings; these couplings were to be manufactured in, and imported from, Red China. The sales contract called for delivery to commence on or about June 30, 1982 and to continue for nine successive months thereafter.
To facilitate the contract, Pel-Star contacted FNBL and requested a letter of credit be issued, in favor of Trans-Global, guaranteeing ten monthly payments to Trans-Global; the payments were to be made, upon presentation of specified documentation, beginning in June 1982. Pel-Star agreed to reimburse FNBL any payments it was required to make under the credit and to pay any charges involved in *771 the credit; FNBL agreed to make payments pursuant to the terms of the letter of credit which, by design, took into consideration the previously mentioned ten monthly deliveries contemplated in the contract of sale.
On March 9, 1982, FNBL issued Letter of Credit 793 to Trans-Global.[1]
Letter of Credit 793 was a "revolving" letter of credit. Whereas a "conventional" letter of credit is non-renewable, and once the amount of credit specified in the letter has been drafted against the credit ceases to exist, the revolving letter of credit provides a certain renewability. The stated amount of the revolving letter of credit, though partially diminished by each draft, once again rises to the original stated amount after a draft is cleared. This type letter of credit is used when it is known there will be periodic drafts under a single transaction or to allow for a series of transactions under a single letter of credit. Though there are fluctuating amounts of credit available at various times, there is only one "credit" in existence.
Trans-Global accepted Letter of Credit 793 and delivered it to its own bank, the Continental Bank of Harvey, Louisiana. (This bank later merged with FNBL.)
On June 24, 1982, Trans-Global presented the first of the ten monthly drafts under Letter of Credit 793 to FNBL for payment. Pursuant to the terms of the credit, which required proof of shipment of the goods from Red China prior to payment, payment was made.[2]
The terms of Letter of Credit 793 required, for each of the nine remaining payments, Trans-Global provide proof of arrival of the product in the United States and certain tests, to determine the quality and quantity of the shipment, be completed on the goods prior to payment of drafts.
FNBL, the issuer of Letter of Credit 793, specifically adopted, by making the credit subject to, the Uniform Customs and Practice for the Documentary Credits. This document provides, in pertinent parts:
"Article 36
If shipment by installments within given periods is stipulated and any installment is not shipped within the period allowed for that installment, the credit ceases to be available for that or any subsequent installments, unless otherwise specified in the credit. (Emphasis added.)
Article 37
All credits, whether revocable or irrevocable, must stipulate an expiry date for presentation of documents for payment, acceptance or negotiation, notwithstanding the stipulation of a latest date for shipment."
Letter of Credit 793 established an expiration date, for presentation of the first draft, of June 9, 1982. The next consecutive monthly draft was due on July 9, 1982, and at the latest, July 24, 1982. Recall, this presentation, to be payable, would require documentation of arrival in the United States and the completion of certain tests for quality and quantity of goods.
The next presentation of a draft under this credit was attempted on September 28, 1982. Payment was refused.
Suit was brought against FNBL alleging the wrongful dishonor of the draft; Pel-Star intervened in that suit aligning itself with FNBL. The defenses presented by FNBL alleged presentment of non-conforming documents and expiration of the credit.
The trial court found there was no wrongful dishonor of the draft presented because the credit had expired. This decision shall be affirmed and the questions of documentation need not, and will not, be discussed.
We conclude that letters of credit involve three distinct contracts as mentioned above: (A) the contract of sale or the underlying contractin this instance, the contract between Pel-Star and Trans-Global; (B) the contract between the customer, *772 Pel-Star, and the bank; and (C) the credit itselfLetter of Credit 793. In issuing the credit, FNBL was free to make any agreement, not contrary to law or public morals, that Trans-Global and Pel-Star could live with in light of their underlying agreement. The Letter of Credit contained specific time limits for presentation of each draft under the single credit. When an installment was missed, the credit ceased by its own terms. There was no wrongful dishonor.[3]
For these reasons, the judgment of the trial court shall be affirmed. Appellants shall pay the costs of this appeal.
AFFIRMED.

APPENDIX
 March 9, 1982

IRREVOCABLE LETTER OF CREDIT NO. 793
Trans Global Alloy, Limited
405 Gretna Boulevard
Gretna, Louisiana 70053
Gentlemen:
We hereby establish our Revolving Irrevocable and Transferable Letter of Credit in your favor for the account of Pel Star Couplings, Inc., 417 Ricou Street, Shreveport, Louisiana, 71107, and authorize you to draw on us up to an aggregate amount of THREE HUNDRED FIVE THOUSAND ($305,000.00) U.S. DOLLARS, available by your drafts at sight, to be accompanied by:
An affidavit of an officer of Continental Bank, Harvey, Louisiana, which affidavit states that Continental Bank is the holder of the Letter of Credit no. 793, along with the following documents: Inspection report by licensed API inspector stating random sampling of blank couplings have met established plans and specifications. In addition, certificates shall contain material specification, grade and chemical composition in compliance with the API standards and threaded couplings shall contain the API monogram. Letter from freight forwarding firm stating goods have been accepted and cleared customs, Port of New Orleans or Port of Houston.
This Letter of Credit may be drawn on for the first shipment only upon receiving a draft accompanied by documents stating that goods have been placed on ship and are being shipped and Maritime Insurance covering shipment naming First National Bank of Lafayette as loss payee. The Letter of Credit will then be renewed to its original amount to cover nine consecutive shipments for nine consecutive months thereafter. Drafts for these nine remaining shipments will be made as stated above. Expiration date of this first Letter of Credit will be June 9, 1982.
If the seller is unable to negotiate the Letter of Credit before the expiration date due to receiving shipment late, the Letter of Credit will automatically be extended for an additional 15 days.
The right to draw under this Letter of Credit is, by the holder hereof, absolutely irrevocable and unconditional, except as set forth herein, and is transferrable and/or assignable in whole or in part.
NOTES
[*] Judge Alfred A. Mansour of the Ninth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court.
[1] Letter of Credit 793 is attached hereto as an Appendix.
[2] This presentment and payment was made on the last possible day under the terms of the credit, Trans-Global having made full use of the fifteen day extension provided.
[3] This decision, that the letter of credit no longer exists and cannot be drafted on, does not address any questions concerning whether Pel-Star may have some obligation to Trans-Global for later arriving shipments. The underlying contract is totally independent of the credit. See Cromwell v. Commerce & Energy Bank, supra.